My name is Myra Sun. I'm here for Louis Brock. This case presents an issue that is an evolving issue, and I think that's I'm sorry, you're going to have to keep your voice up. This is an evolving issue, and that is the nature of the mental disorder that is required for civil confinement under the Sexual Predators Act. The State has raised the question in its brief of whether this matter was the issue as presented on appeal was properly presented to the District Court and to the State courts, and I just wanted to identify what the problem is. I believe that it was, Your Honor. It's just, as I said, that it is an was whether the jury's verdict indeed satisfied the requirement for a civil commitment under the constitutional standard of due process as identified by cases like Fouché. And that, in fact, is a case that was cited in both Kansas v. Hendricks and Kansas v. Crane. These are cases that both the District Court and indeed this Court can rely on. Crane refined the notion that the disorder sufficient to justify civil commitment is whether the person has a The difficulty in the mental health community is whether the disorders that are, that it identifies are indeed matters solely of the ability to control versus disorders that may be congenital or environmentally product of one's upbringing. And Mr. Before you get too far into the merits, is there a question in this case about exhaustion? Your Honor, I don't believe there is. When the Second Amended Petition was presented and Ground 7, which is the ground on which we rely, was presented, the State did not treat it as exhausted. There was a motion, well, there was a pleading filed by the State in which they listed grounds that they did not believe were exhausted. Ground 7 was not among them. Now, the difficulty we have in this case is that the magistrates took the Second Amended Petition and somewhat reorganized the claims. And so when it finally decided, as it did in the fourth report and recommendation, to deny this particular claim, it had been somewhat reconstituted. And basically what he did, what the magistrate did, and I don't know that it was unreasonable, was to take parts of Ground 7 and parts of Ground 14 and lump them all because they all had to do with the jury's decision. They all had to do with the verdict itself. So I don't believe that the State raised the issue of exhaustion below specifically. Below? Right. Raised it here, though. They raised it here. And the problem that we have, and I'm loath to say simply that they didn't, that they waived it because, as I recognize, this issue is a somewhat evolving one. The notion of exactly what was wrong with the jury's verdict in this case becomes clearer when one reads Crane. And that, I think, is the problem that we have. And that is one of the issues that the State raises. But I do think that basically the claim was raised and argued, and in a motion for partial summary judgment by previous counsel, specifically the notion of Fouché and the notion of whether personality disorder by itself can suffice for civil commitment, whether it satisfies the dangerousness component, was addressed in the district court. I should also note that the State courts in In re Thoreau, which is a case that the State cites, the Washington Supreme Court has addressed this in the context of other verdicts and other sexual predator act, I call them prosecutions, in cases. So even though I know that there is generally a view that these issues should not be raised in this context, first of all, I think we partly have it in Crane. And secondly, we have also the fact that the State supreme court has looked at the issue. And since it is not an absolute bar, I would urge the Court to continue to look at this issue. Yes. What was the jury instructed? The jury was instructed that it should find either a mental abnormality or a personality disorder that rendered him likely to commit sexually violent acts in the future. The definition of mental abnormality involved an emotional or volitional component, and I read emotional or volitional component as dividing the disorder between the kind of disorder that psychiatrists identify as something outside of someone's control, which a paraphilia is. And that is the disorder that one expert opined Mr. Brock suffers from, another expert opined that he did not suffer from it. That is, in other words, a disorder that makes one unable to control one's behavior. So what the jury was instructed? Emotional or volitional disorder. Volitional disorder. Well, emotional or volitional. Or volitional disorder. Right. And it wasn't acts that rendered him likely to commit sexually violent acts in the future. I don't have the exact language I can find, but that's basically it. What do you think should have been in there in addition? Well, I think the issue that Crane brings, really brings to mind is whether this sufficiently told the jury that they needed to find it was an uncontrollable or at least involved some lack of ability to control his behavior. Was there something in the instruction about being a menace? A menace? Yes. Off the top of my head, I don't remember that, but you may. It's part of the definition of mental abnormality. Let's see. He has this. It means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others. Oh, right. Those are taken from the statute. Is that sufficient to convey the notion that it's out of control? No, because I think that what the point of some of the, well, the mental health community at least, and the trouble is overlaying a legal definition on it, identifies some disorders as embodying an inability to control one's behavior, whether that is congenital. Do you think this would have been, see, what I don't understand is this seems pretty strong to me. It seems to me that the definition of mental abnormality, which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace, it seems to me that's a stronger standard than to simply say predisposes the person to the commission of criminal sexual acts in a degree that he can't control. I don't think of that language, which is lifted directly from the statute. I don't, respectfully, I don't know that I believe that it has anything to do with the ability to control. I guess I read that as having to do with the degree of danger that the person creates to the community, and not necessarily, well, not at all having to do with the issue of the person's ability to control. But what would you say instead? If you had this instruction now, what would you say? I guess I would, for example, I would remove the phrase emotional or. I do think that the issue of ability to control, the phrase lack of control, which comes from Crane, should be part of the instruction. And that it wasn't in this case, I think. And because the jury didn't find unanimously even that there was a mental abnormality, they also turned to the possibility of a personality disorder. That is why there is an error here. I think we understand. We'll give you about a minute for rebuttal. Thank you. May it please the Court. My name is John Sampson, Assistant Attorney General representing the Respondent. I will address the last issue that was just discussed first and then address whether the issue was raised below and whether it was properly exhausted. On excerpt of Record 5 is the to commit instruction, which the Washington Supreme Court in the Thorell case found is sufficient to cover Crane's requirement for some lack of volitional control. And one of the factors the jury must find is that a mental abnormality or personality disorder makes Louis Brock likely to engage in predatory acts of sexual violence. There was expert testimony, Dr. Wheeler, which is set forth in the supplemental excerpts of Record, which said both the personality disorder and the mental abnormality suffered by Mr. Brock made it difficult for him to control his behavior. The antisocial personality disorder has impulsivity as one of its criteria for diagnosis, and the paraphilia, which he also suffers from, constitutes an inability to control his urges to commit rapes. Was instruction 12 given? Instruction 12 was given, Your Honor, and that is on excerpts of Record page 6. And those combinations of instructions satisfy what Crane requires. And, in fact, the language in Instruction 10 mirrors what the Supreme Court held proper in Hendricks and which Crane essentially reaffirms. Crane refused to establish a bright-line rule. Crane did not say that the jury must find and be specifically instructed on volitional control. It simply said that there must be some evidence that the person suffers an inability to control his behavior. Addressing whether the issue was raised below, there was a due process claim raised in Claim 7 of the Second Amendment Petition, but that focused on different aspects of due process rather than the issue raised now. That focused on whether the jury had to be unanimous as to whether there was a mental abnormality or unanimous as to whether it was a personality disorder, whether there was sufficient evidence to prove either of those, and whether the prosecutor proved its required burden of proof, and the issue being whether by proving him likely to engage in predatory acts, whether that was a reasonable doubt as required under state law. That was not the issue now that is being presented to this Court, of whether there had to be specific instructions and a specific finding on a lack of volitional control. That issue also was not presented to the state courts. Mr. — these proceedings in the district court and the state court terminated over a year before the Supreme Court even issued its decision in Crane, and the record shows no proof that Mr. Brock filed a subsequent petition in the state court following the issuance of Crane. What's your response to Ms. Sun's argument that, in effect, I think this is what you're saying, the state waived the exhaustion requirement? We did not waive it, Your Honor, because — Because you didn't raise it in the district court. Exactly. She didn't raise the claim that — or Mr. Brock didn't raise the claim in the district court. We had no opportunity to argue it was unexhausted until now. Because of the fact that Crane was decided after this, you know, this case became final, you're not making any kind of a Teague claim, are you? You don't argue that at all in your brief. I do argue Teague, Your Honor, to the extent that Mr. Brock is arguing that specific instructions and a specific jury verdict have to be given to satisfy due process. No such rule existed when his judgment became final in 1995, and my position is it doesn't even exist now under Crane. Crane refused to establish a bright-line rule that they have — that Mr. Brock asserts at this point. Crane is a little murky. It is, Your Honor. It is. And the Court specifically said it would leave to the States to define what is mental illness and what is mental abnormality. And it's true, there is a distinction between what psychiatrists and psychologists feel is mental illness and what the law requires. And the Supreme Court said that is appropriate for the States to decide. We would ask that the Court affirm the district court's judgment. Thank you. Ms. Sunde, do you wish to add anything? I think, Your Honor, that I only had about 40 present. That's all right. So the only thing I just — the only thing I wanted to ask the courts to look at is docket number 177, which I didn't put in the excerpt of record, but is part of the argument that previous counsel submitted on the issue of due process, because I do think it was raised there. Okay. Thank you. The case just argued is submitted for decision. The next case, the United States v. Landry, has been stayed pending Supreme Court decision.
judges: Schroeder, Browning, Tashima